*** Filed ***
11:12 PM, 15 Oct, 2025
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____x

**HELENA JUSZCZAK,**

       Plaintiff   **DOCKET NO. 25-cv-00850-OEM-CHK**

   -against-

               **AMENDED COMPLAINT**
                *Jury Trial Demanded*

**THE NEW YORK CITY DEPARTMENT OF**
**EDUCATION and THE CITY OF NEW YORK**

       Defendants

_____x

**PLAINTIFF HELENA JUSZCZAK,** ("Plaintiff") proceeding Pro Se, as and for her

Summons and Complaint filed to protect her Constitutional rights against the above-

captioned Defendants the **NEW YORK CITY DEPARTMENT OF EDUCATION and**

**THE CITY OF NEW YORK** ("Defendants" or "DOE"), alleges upon knowledge as to her

own facts and upon information and belief as to all other matters:

<u>**PRELIMINARY STATEMENT**</u>

1.  While government is fully empowered to make emergency action against life-threatening

   dangers, it is bedrock law in this country that constitutional rights and prohibitions do not

   change in an emergency. "The Constitution was adopted in a period of grave emergency. Its

   grants of power to the Federal Government and its limitations of the power of the States

   were determined in the light of emergency and they are not altered by emergency." Home

   Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the

   Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v

Cuomo, 208 L.Ed. 2d 206, 210 (2020).

2.  After the COVID-19 pandemic panic became a topic of concern in the fall of 2019, the City of New York started a process that was based upon an autocratic presumption of police power with widespread discrimination in implementing its vaccine mandates.

3.  The First Amendment to the Constitution of the United States protects the right of the individual to freedom in his or her religious belief and from bodily harm. This freedom is subject only to the qualification that its exercise may be limited by governmental action where such exercise clearly and presently endangers the public health, welfare or morals.

4.  This is a civil action seeking  injunctive relief, monetary relief, including past and on- going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected due process rights given to her as a Civil Servant and permanent paraprofessional pursuant to 42 U.S.C. Section 1983, 1st,  and 14th Amendments to the United States Constitution and New York State and New York City Human Rights Law (NYSHRL and NYCHRL), which prevent employers from (1) retaliating or discriminating against employees based on an employee's religious belief; (2) wrongfully forcing Plaintiff into a suspension without pay and then terminating her, circumventing public policy employment and Civil Service Law §75(b) due to the charged misconduct and placement on the Problem code database.

5.  Despite giving religious-based accommodations to other tenured employees similarly situated, and placing many unvaccinated employees on reassignment ("rubber rooms") in Defendant's district offices and at home on full salary, Defendants, acting at all times under color of law, did not grant Plaintiff's religious exemption/accommodation request ("RA"), offered no accommodation whatsoever, and terminated her. Shockingly, at no time did the terms/conditions of employment change for Plaintiff, despite arguments opposing this claim by

the Defendants. Additionally, the CVM *as applied* to Plaintiff and all others similarly situated was not generally applicable, nor was it neutral. Although the COVID VACCINE MANDATE has been declared unconstitutional in these Courts, Plaintiff here highlights the fact that the CVM *as applied* was unconstitutional. That's not all that went wrong in 2021-2022. Not a single union in the City agreed with, or ratified, a change of the terms and conditions in their contracts that agreed with the City's mandate to coerce their members into getting vaccinated or lose their jobs. Yet Defendants created an unconstitutional process to disapprove every request for accommodation without changing the UFT-DOE Collective Bargaining Agreement ("BA") and the terms of employment detailed therein.

6.  The City used this false information and their power over the City budget and salaries as collateral, destroying the lives of thousands of honest, good workers and their families. Defendants denied Plaintiff's request for an RA without any factual basis or proof after Plaintiff requested a RA in September 2021. Then, she was punished by Defendants for not getting the vaccine by being terminated, after being placed on a "problem code". This code blocks Plaintiff from getting paid by the Defendants or any vendor, and is a disciplinary action, with a charge of misconduct/insubordination due to Plaintiff holding onto her religious beliefs and refusing the vaccine. These actions by Defendants may clearly be defined as retaliation, motivated by an intent to harm.

7.  Plaintiff's demands for relief include recovery of monetary damages in backpay from the date of being removed from salary to the present; full reinstatement to Plaintiff's prior title and position with all raises and benefits; her name and personal data removed from the Office of Personnel Investigations' ("OPI") Problem Code database; and/or any and all other compensatory and punitive damages allowable by law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.  Plaintiff submitted her religious accommodation requests in a timely fashion yet she was never given any dialogue on what accommodation could be offered or reasons for the deprivation of Constitutional rights. Plaintiff was denied her due process pursuant to the City, State, and Constitutional Law.

## PARTIES

9.  Plaintiff was a paraprofessional of the Department of Education of the City of New York in good standing when her rights to her religious beliefs were denied to and she was terminated. She started working as a Special Education Paraprofessional in 2011. She had an impeccable reputation and record, and is a very creative artist and talented singer. Plaintiff was a public employee of Defendants within the meaning of an "employee" as defined in New York State Civil Service Law § 75-b(1)(b). Plaintiff lives in Glendale, New York.

10. Defendants the New York City Department of Education ("DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and has been and continues to be a recipient of substantial federal funds, and as such, acts under color of law with its principal place of business located in 65 Court Street in Brooklyn, New York.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the First and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Education Law §3020-a (the "tenure law"). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4)  for claims

arising federal questions under 42 U.S.C. 1983. Defendants acted at all times under color of law.

12.  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

13. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

14.  This action seeks recovery of monetary damages for the violation of constitutional rights of enshrined in Federal Statute and state law protecting the rights of employees to their religious beliefs while working in public service in New York State.

15. Plaintiff was hired as a paraprofessional by the New York City Department of Education ("DOE") in 2011.

16. Plaintiff has not become vaccinated with a COVID-19 vaccine because she holds sincere religious beliefs that prohibit her from getting vaccinated.

17. In August 2021 the NYC Mayor issued over a hundred "emergency" orders that collectively functioned to mandate the COVID vaccine ("CVM") for nearly every working person in the City. But not everyone was required to take it. For municipal workers – including employees of the DOE – the terms of the COVID Mandate vaccination program (CVM)  were much more narrow and discriminatory, and as a result, the CVM cannot be seen

as neutral and/or generally applicable.

At the same time,  Wolf Blitzer interviewed CDC Director Rochelle Walensky, who acknowledged on national television that the vaccines could not stop transmission of COVID. https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html

18. On September 10, 2021 the DOE sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021.This alleged forced "policy" never changed the terms of Plaintiff's employment, although claiming to do so. See **Exhibit A**, Scheinman Award Dated September 10, 2021.

19. On September 15, 2021, the Commissioner of the Department of Health issued an updated COVID Mandate that allowed municipal workers to apply for accommodations. See **EXHIBIT B**, Chokshi Order.

20. On September 14, 2021 Plaintiff applied for a religious accommodation but was denied by Defendants (in an email) See **EXHIBIT C**, **Clergy Letter, EXHIBIT C(1)** Denial of RA.

21. In October 2021 Plaintiff was told that she was now on Leave Without Pay, a forced suspension/punishment that is not allowable by law. See **EXHIBIT D**.

22. On September 23, 2021 her appeal of the denial by Defendants was sent to the Scheinman Arbitration and Medication Services for consideration. She appeared in front of Arbitrator Daniel McCray for 15 minutes and was denied the next day with an "X" in the box next to "DENIED". See **EXHIBITS E(1) and E(2)**

23. On October 5, 2021 Plaintiff was informed that now she was removed from her salary, she could not work for any school or vendor. See **EXHIBIT F.**

24. On November 28, 2021 the Court of Appeals threw out the Scheinman Appeals Process and

Award because it was "constitutionally infirm". In a letter to this Court dated July 7, 2022 in

Broecker et al. v New York City Department of Education et al Docket No. 21-CV-06387-

KAM-LB: Attorney Austin Graff cited Scheinman for violating Department employees' rights:

In Scheinman's June 27th Award Scheinman wrote:

"... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing. Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio."

Graff adds:
"First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiff on leave without pay. As Plaintiff argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiff argue, then the NYCDOE did not have any authority to place the Plaintiff on leave without pay without due process, thereby violating the Plaintiff' due process rights. Scheinman's words are additional evidence that the Plaintiff have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinrnan establishes, by his own words, that he actively participated in the violation of the Plaintiff' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing….. admitting that his actions caused the Plaintiff to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

See **EXHIBIT G**, Court of Appeals Order.

25. On February 15, 2022 Plaintiff received a termination notice from Defendants stating that

she had been terminated on February 11, 2022. The DOE claimed that her terms of

employment had been changed, and this was false. See **EXHIBIT H.**

26. Despite giving accommodations (RA) to other tenured employees similarly situated – some

reported 160 were given accommodations, other reports claimed 148, or 176, out of 3000 appeals granted - and despite offering those approved both remote work and reassignment locations and at home on full salary, Defendants, acting at all times under color of law, offered no accommodations whatsoever, and terminated Plaintiffs without justification and without a fair hearing.

27.  On or about February 2023 Plaintiff became aware that she had been placed into the Defendants Problem Code database on October 4, 2021 when she did not submit a valid Vaccination Card to the DOE. She was shocked to hear that this Code would remain on her personnel file permanently, unless a Judge ordered her cleared. See **EXHIBIT I**, Problem Code documents. Plaintiff could not get hired within the DOE or with a vendor, and she could not obtain unemployment due to the fact that the Department of Labor recognized the Problem Code as disciplinary action for misconduct. Indeed, although Scheinman insisted the terms of employment for DOE employees had been changed and the Award was NOT disciplinary, both of these statements were false and part of the conspiracy of harm brought by the City and the DOE against DOE employees such as Plaintiff.

28. By discarding due process rights and adopting a facially discriminatory religious accommodation policy, Defendants also conditioned approvals for municipal workers - who wanted to continue working while unvaccinated- on membership in a favored religion and on blind support for an Emergency Use Authorization (EUA) vaccine that was temporary yet created permanent harm for Plaintiff. COVID-19 Vaccines are completely different than traditional vaccines. Prevalent breakthrough cases do not exist for measles, mumps, rubella, and polio in people who have had received vaccination or gained natural immunity.

28. Defendants engaged in widespread religious and medical discrimination in implementing its vaccine mandates by discarding due process rights outright, and adopting a facially

discriminatory accommodation policy that conditioned an exemption on membership in a favored religion or type of illness. "Salus populi" or "health of the people" seems to be the mantra of the Defendants in this matter except they acted under color of law to make up any arguments that were convenient for their agenda rather than those that made sense or had constitutional validity. Salus populi expresses a common law principal for the state's—and NYC's—exercise of police powers.

29. The agenda of the Defendants was to allow City agencies to cull the municipal workforce according to a business model created by Jack Welch. Welch said that businesses should always fire the bottom 10% of the workforce every year, because this keeps everyone on their toes.

30. In this case, the Defendant theme was: "government can restrain individual liberties to the extent it furthers the ends of preventing harm to other citizens. As the CVM stopped the COVID-19 virus in its' tracks, NYC would have a compelling interest to mandate everyone living and working there to get vaccinated. Even if the Vaccine resulted in even mild side effects, the benefit to the public would outweigh the risk to the individual."

31. There was a problem with this argument, namely that the COVID vaccine did not, and does not, stop the transmission of the virus and does not slow the spread of the virus, or prevent COVID-19.

32. Plaintiff received no justification for her being denied her requests for accommodation despite her completion of their administrative remedies to obtain such an accommodation.

33. In March 2022 Plaintiff filed a Grievance with the UFT for being terminated unfairly, but the Grievance could not move forward because the DOE would not allow it. **EXHIBIT J.**

34.  On February 10, 2023, Mayor Adams ended the COVID-19 vaccine mandate and made it voluntary.

35. On October 9, 2025, Plaintiff was told by the DOE that she remains on "inactive" status, meaning she remains on a problem code. **EXHIBIT K**.

36. The chaotic mess of the explosion of inequalities of law and vaccinations continue today. The New York Post highlighted the hundreds of employees who were getting exemptions:

> **City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees**
> https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees; Gothamist, Sept. 24, 2021.

37. Plaintiff received auto-machine-created denials that had no details about why she was denied, in violation of the rules of City Service and her rights under Civil Service Law Section 75(b):

> "A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information:(i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or(ii)which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation."

> Civil Service Law Section 77 says:
> "Pursuant to N.Y. Civil Service Law Section 77, a City employee who is unlawfully removed from his or her position, and who thereafter is restored to such position as a result of court order, is entitled to receive back pay and other benefits. See, e.g., Johnson v. New York City Dep't of Env't Prot., 824 N.Y.S.2d 39 (1st Dep't 2006), aff'd 882 N.E.2d 386 (2008). Section 77 requires compensation for back pay and other losses. See Boylan v. Town of Yorktown, 579 N.Y.S.2d 126, 127 (2d Dep't 1992); Johnson, 824 N.Y.S.2d at 40 (a reinstated City employee is entitled to recover lost overtime "to the extent that those amounts can be documented")."

38. According to Eric Eichenholtz, the attorney at the City Law Department who created the Citywide Panel, from October 2021 through December 2022 religious and medical accommodations were given to several hundred applicants from all agencies in NYC. See the Transcripts of Eric Eichenholtz, **The Citywide Panel and the Final Judgment in Kane-Keil-New Yorkers For Religious Liberty** (https://advocatz.com/2025/01/25/new-york-state-court-of-appeals-issues-an-amended-judgment-in-new-yorkers-for-religious-liberty-et-al-v/;);

and the **AFFIRMATION OF ALLAN DEUSCH** at https://wp-advocatz-

uploads.s3.amazonaws.com/uploads/2025/01/Affirmation-ALLAN-DEUTSCH-DCAS.pdf.

39. None of the members of the Citywide panel could give accurate numbers or individual

criteria for the approvals or denial of the appeals brought to the Citywide Panel. Each person

deposed said there were way too many applicants to know each person's information, and no

one knew what "undue burden" meant in terms of  NYSCHRL and NYCHRL standards and

the standard set by Groff v DeJoy (Groff v. DeJoy, 143 S. Ct. 646 (2023)).

40. In the case of former NYPD Isaac Valdez, Attorney Jimmy Wagner wrote as follows:

"The NYPD states it will not reinstate Mr. Valdez unless he gets vaccinated in violation of
his religious beliefs. However, in a brutal twist of infinite government mocking of Plaintiff's
religious beliefs, Plaintiff has been hired to work as a private contractor, armed professional
guard in the NYC subway systems, without any requirement to be vaccinated, for half the pay
rate and minimal benefits. How can Plaintiff work as if he was doing the same task from
municipal employment to private employment. It is legally discriminatory practice against
Plaintiff based on his religious beliefs."
(Index No. 152301/2022)

41. On January 31, 2023 in the same case, Mr. Michael Melocowsky, Executive Director of the

Equal  Employment Opportunity Division (EEOD) of the NYPD testified that if he found

someone credible in their religious beliefs, and they had held them for a long time, then

maybe he would give this person a reasonable accommodation, which was weekly testing and

no finding of a positive PCR for the COVID virus. He approved 176 out of almost 7,000

applicants. He could not say whether these approved people had medical or religious appeals,

he was vague on the credibility determination criteria, and knew of  no costs for what an

"undue burden" on the agency might mean. He could not remember any individual who was

interviewed in person.

42. The Citywide Panel failed to comply with the directive from this Court to follow Title VII,

Human Rights Law, State and Federal Laws, or the UFT-DOE CBA, Collective Bargaining

Agreement.

43. LWOP was stunningly in violation of all the rights Plaintiff had as a permanent city service employee. Human Resources law does not have any forced leave without pay. Leaves are voluntary. The employment contract for city employees allows leaves for sabbaticals, bereavement, illness, taking care of a relative, and injuries. If someone wants to take a sabbatical, or time off to take care of an ill relative, he or she may apply to take an unpaid leave from their work for a limited time. This applies to the Family Leave Act as well. All these are common in the workplace, and voluntary.

44. Indeed, the United States Supreme Court made a ruling in 2006 in the case Burlington Northern & Santa Fe Railway v White (548 U.S. 53(2006)) which labelled any suspension/leave without pay as "retaliatory discrimination." The Judges ordered Ms. White to be compensated for the 37 days she was involuntarily suspended without pay. See: **Suspension Without Pay is Retaliatory Discrimination**

https://advocatz.com/2023/04/13/suspension-without-pay-is-retaliatory-discrimination/

45. AWOP or AWOL are Human Resource terms for misconduct because the employee willingly and deliberately does not show up at work, and gives no notice. This type of leave is absent without pay, and not allowed, so punishment is valid and rational. What Martin Scheinman did was not either valid or rational. He created LWOP out of whole cloth and argued that the forced removal of an employee was not disciplinary, which is absurd, so that no one could get a fair hearing or any hearing. Defendants used this invalid procedure to terminate Plaintiff without due process.

46. While this case challenges Defendants deprivation of Plaintiff's due process in the manner in which the COVID Mandate was implemented, not the Mandate itself, it is worth noting the decision of Judge Gerard J. Neri in the case Medical Professionals For Informed Consent et al., v Mary T. Bassett, Index. No. 008575/2022:

"Arbitrary action is without sound basis in reason and is generally taken without regard to the Respondents acknowledge then-current COVID-19 shots do not prevent transmission (see Summary of Assessment of Public Comment, NYSCEF Doc. No.7, p. 25). The Mandate defines, in the loosest meaning of the word, "fully vaccinated" as determined by the Department in accordance with applicable federal guidelines and recommendations" (ibid). "[I]t is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning" (Gawron v. Town of Cheektowaga, 117 A.D.3d 1410, 1412 [Fourth Dept. 2014], citing Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577,583 [1998]). A term which is defined at the whim of an entity, subject to change without a moment's notice contains all the hallmarks of "absurdity" and is no definition at all. In the alternative, the Court finds the Mandate is arbitrary and capricious."

In his footnote he wrote:

"1 Absurdity -1)  the quality or state of being absurd; 2) something that is absurd –

https://www.merriam-webster.com/dictionary/absurdity

Absurd - 1) ridiculously unreasonable, unsound, or incongruous; 2) having no rational or orderly relationship to human life; 3) dealing with the absurd (the state or condition in which human beings exist in an irrational and meaningless universe and in which human life has no ultimate meaning) - https://www.merriam-webster.com/dictionary/absurd".

47. In order for Plaintiff to be lawfully terminated, she had to have intentionally committed a known act of misconduct that brought harm to someone or the Agency. She then had to be given a hearing at which she presented her statements and supporting documents and she was given a chance to get the same from her employer. At all times she had the right to face her accusers at a fair hearing. This never happened.

48. Plaintiff was found guilty of misconduct, terminated for her religious beliefs, and given no due process mandated by the UFT contract, Civil Service Law, Human Rights Laws both State and City, and 1st and 14th Amendments.

**CAUSES OF ACTION**
**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR RELIGIOUS DISCRIMINATION and RETALIATION**

49. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 48 as if the same were fully set forth at length herein.

50. Plaintiff submitted to Defendants statements on her sincere religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. She was denied by a computer, while other employees similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting the vaccine.

51. Defendants has neither a legitimate nor compelling interest in exercising express and overt religious discrimination and retaliation. Defendants invocation of "did not meet criteria" defenses are plainly false pretexts attempting to cover for the Defendants explicit religious discrimination and retaliation.

52. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption requests and Appeals without any details or reason, and terminated her employment.

53. Furthermore, no dialogue was entered into, and no accommodation was offered or suggested by Defendants. Defendants must show that accommodating the employee would cause a "significant interference with the safe or efficient operation of the workplace." *See NYC Admin. Code* 8-1 07(3)(b). Moreover, "the determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, *in a cooperative dialogue." See NYC Admin. Code* 8-107 (28)(e) (emphasis added). Here, Defendants never showed that granting Plaintiff's accommodation request would make anyone "unsafe", considering the fact that Plaintiff would agree to testing and masking but was never asked to do either in any cooperative dialogue.

54. Further, a hardship that is attributable to employer animosity to a particular religion, to religion

14

in general, or to the very notion of accommodating religious practice, cannot be considered "undue."  Bias or hostility to a religious practice or accommodation cannot supply a defense."

55. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to induce Plaintiff to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then retaliated against her with a "Problem Code" for not agreeing to this extortion and discrimination.

56. The City of New York did not enforce the mandate as it applied to employees in the private sector; NYC did not prevent unvaccinated private sector employees from going to work; Mayor Adams and NYC did not fine private sector employees for not complying with the Mandate.

57. The Mandate only applied to City Workers like Plaintiff, for some mysterious reason.

58. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs.  Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government.  Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones.  All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment.  "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

59. In the new category of discipline titled "insubordinate unvaccinated employee", Plaintiff was

not only removed unfairly and without due process from her job, but ostracized and humiliated by peers both inside and outside of the workplace.

60. Defendants, by denying Plaintiff any accommodation, denied her a place to continue working which were set up by Defendants called "rubber rooms" or "reassignments". One of these places was St. Brigid school.

**City has unvaccinated educators doing remote learning now from the former St. Brigid School** https://evgrieve.com/2022/03/city-has-unvaccinated-educators-doing.html

61. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed, wrongfully terminated, and permanently stigmatized.

62. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion in violation of her Constitutional rights to property, liberty and due process pursuant to 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION
FOR FAILURE TO REASONABLY ACCOMMODATE
THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS**

63. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 62 as if the same were fully set forth at length herein.

64. Plaintiff has sincerely held religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine.

65. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption requests and Appeals based upon an unconstitutional mandate and procedure known as LWOP, and gave no details or reason for her subsequent termination. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

66. Plaintiff was denied accommodations without due process, yet other employees of the

16

Defendants received accommodations for their religious and/or medical accommodations. No explanation for that disparate treatment was given.

67. Defendants never engaged in a dialogue about Plaintiff's accommodation or exemption.. This deprivation of a lawful procedure was intentional, acted on under color of law, and pursued in bad faith.

68. Defendants omitted information of their long-term policy in accommodating employees according to law. This matter shows that Defendants not only did not engage in a dialogue about the accommodations, but punished Plaintiff who was seen as guilty of misconduct for applying for exemptions.

69. Based on the foregoing, Defendants failed to provide a reasonable accommodation and as a result, discriminated against Plaintiff on the basis of her religious beliefs and unlawfully discriminated against her in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A THIRD CAUSE OF ACTION:
### VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

70. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 69 as if the same were fully set forth at length herein.

71. Defendants, while acting under the color of law, unlawfully deprived the Plaintiff of her rights to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion, and Plaintiff's constitutionally protected conduct.

72. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure

Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants conduct was intentional, conducted with bad faith, and wholly irrational.

73. In Garvey v City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

74. New York City was the only location in New York State which mandated the vaccine or termination for public employees. As a direct result of Defendants violation of the Plaintiff's Fifth and Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

75. Due to Defendants violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages including backpay.

76. The Fourteenth Amendment prohibits any State from denying to "any person within its jurisdiction the equal protection of the laws." 129. NY Const art, I §XI states that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state." 130. 42 U.S.C. §1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress."

77. Mandating City workers like Plaintiff to get vaccinated and not allow testing or masking is illogical, arbitrary, and nonsensical. This policy does nothing to further the goal of stopping the spread of COVID-19.

78. Thus, unvaccinated people in the City were punished only if they worked for the City of New York. The City could not achieve herd immunity even if every City worker were vaccinated. Vaccination is a permanent measure that does not go away at the end of the workday. Still, the named Defendants singled out Plaintiff by terminating her and taking away any accommodation, leaving her harmed and broken.

79. There is absolutely no permissible reason for selectively enforcing the mandate against unvaccinated City workers like Plaintiff irrespective of vaccine efficacy.

80. In addition, the plausibility that Defendants was motivated by impermissible considerations or malicious intent skyrockets considering that the Vaccine—as alleged herein—does not stop the transmission of the Virus. Defendant carve outs supports the inference that they knew it did not work. Defendants acted in violation of clearly established federal law.

81. The CVM is not rationally related to furthering the public health under any conceivable circumstance.

82. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her religious beliefs, unlawfully discriminating against the Plaintiff in violation of 42 U.S.C. § 1983; 1st, 5th and 14th Amendments due process clauses; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.


**AS AND FOR A FOURTH CAUSE OF ACTION:**
**VIOLATION OF DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS**

83. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 82 as if the same were fully set forth at length herein.

84. Plaintiff also brings a claim to enforce fundamental rights under the Substantive Due Process Clause.

85. Defendants had no compelling or even legitimate reason to mandate the vaccines or to deny Plaintiff her religious accommodation and then order her to put an experimental substance into her body.

86. As the vaccines cannot stop transmission of disease it is not within the police powers of the state to mandate them.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Awarding Plaintiff her former position, salary steps and raises, earned before October 2021, in full, with benefits; and

2.  Awarding Plaintiff all the back pay owed since she was removed from her salary in 2021;

3.  Considering Plaintiff is Pro Se, an opportunity to Amend her Complaint after submission of Defendant papers.

4.  Granting such other and further relief that the Court deems just and proper.

Dated: October  15,  2025
        Glendale, N.Y.

_/s/Helena Juszczak_
Helena Juszczak
Plaintiff Pro Se

CC: Attorney Sonya Gidumal Chazin



SCHEINMAN
ARBITRATION & MEDIATION SERVICES

September 10, 2021

**Via E-Mail Only**
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:    **Board of Education of the City School District of the City of New York
       and
       United Federation of Teachers, Local 2, AFT, AFL-CIO
       (Impact Bargaining)**

Dear Counsel:

   Enclosed please find my Award in the above referenced matter.

   Thank you.

                              Sincerely,

                              Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

Ex 1

```
------------------------------------- X
In the Matter of the Arbitration
                                      X
        between
                                      X
BOARD OF EDUCATION OF THE CITY                Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF        X
NEW YORK
                                      X
            "Department"
                                      X
        -and-
                                      X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                  X

            "Union"                   X

------------------------------------- X
```

**APPEARANCES**

**For the Department**
Renee Campion, Commissioner of Labor Relations
Steven H. Banks, Esq., First Deputy Commissioner
and General Counsel of Labor Relations


**For the Union**
STROOCK & STROOCK & LAVAN, L.L.P.
        Alan M. Klinger, Esq.


Beth Norton, Esq., UFT General Counsel
Michael Mulgrew, UFT President


**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 24 of 76 PageID #: 78

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

2

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 25 of 76 PageID #: 79

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 26 of 76 PageID #: 80

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 27 of 76 PageID #:
81

directed the parties to draft language reflecting those rulings.
Even though I am very familiar with the language of the current
Collective Bargaining Agreement, as well as the parties'
relationship since I am a member of their permanent arbitration panel
and have served as a fact-finder and mediator during several rounds
of bargaining, I concluded the parties are more familiar with
Department policy and how leave and entitlements have been
administered in accordance with prior agreements.  As such, my
rulings reflect both the understandings reached during the
negotiations prior to mediation, those reached in the mediation
process and the parties' agreed upon language in response to my
rulings.  All are included, herein.

I commend the parties for their seriousness of purpose and
diligence in addressing these complicated matters.  The UFT made
clear it supports vaccination efforts and has encouraged its members
to be vaccinated.  Nonetheless, as a Union, it owes a duty to its
members to ensure their rights are protected.  The City/DOE
demonstrated recognition of the importance of these issues,
particularly with regard to employees' legitimate medical or
religious claims.  I appreciate both parties' efforts in meeting the
tight timeline we have faced and the professionalism they
demonstrated serving the citizens of the City and what the million
plus students deserved.  They have invested immense effort to insure
such a serious issue was litigated in such a thoughtful way.

Case 1:25-cv-00850-OEM-CHR Document 23 Filed 10/15/25 Page 28 of 76 PageID #:
82

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I.** **Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 29 of 76 PageID #: 83

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

INDEX NO. 155983/2022
RECEIVED NYSCEF: 07/19/2022

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 33 of 76 PageID #: 87

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 34 of 76 PageID #: 88

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM    INDEX NO. 155983/2022

NYSCEF DOC. NO. 4    Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 35 of 76 PageID #: 89    RECEIVED NYSCEF: 07/19/2022

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. **Leave**

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 36 of 76 PageID #: 90

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i.    Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii.    No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii.    Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv.  Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period.  This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v.  In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child.  As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi.  If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 38 of 76 PageID #: 92

vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.   An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

Case 1:25-cv-00850-OEM-CHK    Document 23    Filed 10/15/25    Page 39 of 76 PageID #: 93

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

Case 1:25-cv-00850-OEM-CHK   Document 23   Filed 10/15/25   Page 40 of 76 PageID #: 94

contained, herein, all parties retain all legal rights at all times relevant, herein.

September /0 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK        )
                         )   ss.:
COUNTY OF NASSAU         )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September /0 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOS.UFT.Impact Bargaining.awd

18

# ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS**, a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS**, unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:
   a. Students attending school or school-related activities in a DOE school setting;
   b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
   c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
   d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
   e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
   f. Individuals entering for the purpose of COVID-19 vaccination;
   g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
   h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

Maria Regina RC Church
3945 Jerusalem Ave.
Seaford, NY 11783
516-798-2415
fr.jason@mariaregina.com

14 September 2021

NYC Department of Education

To Whom it May Concern,

    I am writing this letter at the request of Ms. Helena Juszczak concerning Ms. Juszczak's request for a religious exemption to your institution's policy requiring COVID-19 immunization.

    I would like to highlight two important points that are part of Catholic teaching pertinent to the medical ethics surrounding vaccination. A first point of importance is the necessity of following a well-informed conscience. As Catholics we believe there is a moral obligation for one to follow their well-informed conscience. On some moral issues the Church has definitive teaching to which all Catholics are expected to follow. On the majority of issues, no definite, final teaching has been made, since most issues are quite complex. Vaccination is one such moral issue. We believe the nature of the question of vaccinations is such that it cannot be taught that vaccinations are morally obligatory, even if they are morally licit. Thus, we take seriously certain conscience objections. In the case of vaccinations, the methods of production and testing of such vaccines, not limited to concerns over the use of cells derived from induced abortions, raise conscience objections.

    Secondly, we acknowledge that along with the importance of following one's well-informed conscience, there is an importance in considering the particular circumstances that surround each moral decision. For example: one's particular physical state may mitigate the efficacy of a health care treatment, like vaccination. This can lead to legitimate health care concerns surrounding that treatment. Health care treatments may also have impacts that are not directly related to the treatment (such as the cost of a procedure, or the impact of aftercare). This is what is at the heart of what is spoken of as "therapeutic proportionality" in Catholic ethics. Does this therapy provide a proportionate gain given one's circumstances? Even if in normal circumstances there is a gain, this may not be true in a certain individual's case. As Catholics, we believe that this assessment must be made by the individual receiving the treatment, or by a caregiver in the case of youth or the incapacitated, as he or she takes into consideration the advice of medical professionals.

    While the Church does not specifically condemn vaccinations in general, or certain COVID vaccinations, in particular, I do ask that you take into consideration the religious importance that we Catholics place on following one's well-informed conscience in making a moral decision, as well as the importance of an individual assessing the therapeutic proportionality for his or her own health-care related decisions. Should you have further questions, please feel free to reach out to me through the number or e-mail address provided at the top of this letter.

Sincerely,

Fr. Jason U. Grisafi
Pastor

**Your Appeal**

 solas_donotreply@schools.nyc.gov

Thu 9/23/2021 2:32 PM

To: Juszczak Helena

09/23/2021

Case#: A75786

File# 2644694

EMP ID: 1291871

Dear HELENA JUSZCZAK,

This notification confirms the receipt of your appeal of your denial of a COVID-19 vaccine mandate related exemption or accommodation. This appeal and your application materials and documentation are being forwarded to Scheinman Arbitration and Mediation Services ("SAMS") and independent arbitrators convened by SAMS who will consider your appeal.

Supplemental documentation may be submitted within 48 hours of your filing of the appeal to SAMS by emailing the applicable address below. Please include your name and union in the subject line and send from your DOE email.

UFT: AppealsUFT@ScheinmanNeutrals.com

CSA: AppealsCSA@ScheinmanNeutrals.com

Local 237: AppealsTeamstersLocal237@ScheinmanNeutrals.com

Local 891: AppealsLocal891IUOE@ScheinmanNeutrals.com

Sincerely,

*HR Connect*

Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5926983 N3425 COVID-19_VAX_Exemption_Appeal

Reply  |  Forward



**NYC**
Department of
Education

The DOE's records indicate that you have not yet submitted proof of COVID-19 vaccination. As a reminder, all DOE employees are required to submit proof of COVID-19 vaccination (at least one dose) using the DOE COVID-19 Vaccination Portal no later than **October 1, 2021.**

If you are not on an approved vaccine exemption or leave and do not submit proof of vaccination in the DOE COVID-19 Vaccination Portal by October 1, 2021, you will be placed on Leave Without Pay (LWOP) beginning Monday, October 4, 2021, until you upload proof of vaccination (at least one dose) and attest that you intend to return to work. While on LWOP, you:

- Are not permitted to enter your work or school site,

- Are not permitted to work,

- Will not receive compensation, and

- Cannot use annual leave, CAR or sick time.

Proof of vaccination can be an image of your vaccination card, NYS Excelsior Pass, or other government record. Submitting this information will support New York City's pandemic response and recovery efforts and help ensure that the DOE schools and buildings are safe for all.

If you received the first dose of a two-dose series and are not fully vaccinated by October 1, you must receive the second dose and update your vaccination status within 45 days of the receiving the first dose.

For information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC.

For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

If you encounter technical issues using the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100.

For return-to-office questions please email stayinghealthy@schools.nyc.gov.

For compliance questions please email employeerelations@schools.nyc.gov.

Sincerely,

solas_donotreply@schools.nyc.gov
Thu 9/23/2021 2:32 PM
To Juszczak Helena

09/23/2021

Case#: A75786
File# 2644694
EMP ID: 1291871

Dear HELENA JUSZCZAK,

This notification confirms the receipt of your appeal of your denial of a COVID-19 vaccine mandate related exemption or accommodation. This appeal and your application materials and documentation are being forwarded to Scheinman Arbitration and Mediation Services ("SAMS") and independent arbitrators convened by SAMS who consider your appeal.

Supplemental documentation may be submitted within 48 hours of your filing of the appeal to SAMS by emailing the applicable address below. Please include your name and union in the subject line and send from your DOE email.

UFT: AppealsUFT@ScheinmanNeutrals.com
CSA: AppealsCSA@ScheinmanNeutrals.com
Local 237: AppealsTeamstersLocal237@ScheinmanNeutrals.com
Local 891: AppealsLocal891IUOE@ScheinmanNeutrals.com

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Reply    Forward

October 5, 2021
8:34 PM

‹                                          Edit



SCHEINMAN ARBITRATION AND MEDIATION SERVICES
---------------------------------------------- X
In the Matter of the Arbitration       X

          between               X

NEW YORK CITY DEPARTMENT OF EDUCATION     X    Re: Religious
                                              Exemption
                                      X    (UFT.1640)

          and                 X

Helena Juszczak                 X

---------------------------------------------- X

Issue:    Religious Exemption to Vaccine Mandate

Date of Hearing: October 1, 2021

                    Award

APPLICATION FOR EXEMPTION: GRANTED [ ]   DENIED [X]   OTHER [ ]


_____        10/2/21
Daniel McCray, Arbitrator        Date



**APPENDIX**

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:    Pierre N. Leval,
           José A. Cabranes,
           Denny Chin,
                *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

                            *Plaintiffs-Appellants,*          **ORDER**

            v.                                                 21-2678-cv

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

                            *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

                            *Plaintiffs-Appellants,*

            v.                                                 21-2711-cv

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity of Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

---

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



11/25/22, 8:16



**Department of
Education**

November 18, 2022

Brooklyn, New York

Title: Teacher/
Applicant ID:
PRP#:

Dear Ms.

Your name was recently submitted to the Office of Personnel Investigation (OPI) for security
clearance to work with the NYC Department of Education (DOE) or a DOE contracted vendor.
According to our records, your services with the DOE were terminated due to noncompliance with
the vaccine mandate and you currently appear out of compliance. The purpose of our contact was to
request information so that your application could be processed for security clearance. Requests were
sent to you at the email address you provided              @aol.com' on November 10, 2022 and
November 16, 2022. You were given a deadline to provide the requested information. To date, we
have not received the required information.

Due to your non-compliance, you are unable to work with the DOE or any DOE contracted vendors.
As such, your case has been administratively closed, and no security clearance determination has been
made. Please note that at this time, you do not have security clearance to work with the DOE and/or
one of its contracted vendors.

Sincerely,

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education

cc: File

On Thu, Jan 20, 2022 at 10:07 AM, Karen King
<KKing@uft.org> wrote:

**To:**            KKing@uft.org.
**Subject:** RE: Employee Code with the DOE
**Date:** Thu, Jan 20, 2022 11:05 am

Hello,
I hope that this email finds you well. The problem code is due to the vaccine mandate. Since you are unvaccinated then you are unable to work for the NYCDOE. In the future if this vaccine mandate was still in place and you were to get vaccinated you would be able to go back to the NYCDOE and the problem code would be removed.
**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

From: kking@uft.org >
Date: Thu, Apr 28, 2022 at 12:50 PM
Subject: response from UFT regarding the problem code
>

**Karen King** (KKing@uft.org)To:you Details
Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
kking@uft.org

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

MICHAEL KANE, et al,

                                    Plaintiffs,

            - against --
                                                    21-CV-7863 (VEC) (Lead Case)

BILL DE BLASIO, et al.,

                                    Defendants.
------------------------------------------------------------------- x

MATTHEW KEIL, et al.
                                    Plaintiffs,

            - against -
                                                    21-CV-8773 (VEC)

THE CITY OF NEW YORK, et al.,

                                    Defendants
------------------------------------------------------------------- x

**MALLORY O. SULLIVAN**, under penalty of perjury, declares pursuant to 28 U.S.C. §
1746, that the following statements are true and correct:

            1.          I am the Deputy Director of the Office of Employee Relations
("OER") at the New York City Department of Education ("DOE"), and I have held this position
since November 2014. Prior to serving in my current position, I was an Agency Attorney with
the DOE's Office of the General Counsel for approximately four years.

            2.          I submit this declaration to provide information about DOE's
employment record system in response to certain allegations regarding "problem codes" as set
forth in the Declaration of Natasha Solon dated May 20, 2022 (ECF dkt. 162). I am familiar

with the facts set forth herein based on my personal knowledge as well as discussions with other DOE employees and the review of DOE records.

3.          In my role as Deputy Director, I oversee the DOE's Office of Personnel Investigation ("OPI"), which is responsible for, among other things, screening and conducting background investigations for all candidates for employment with the DOE or with vendors under contract with the DOE and monitoring employee and vendor employee security clearances. As a part of these processes, OPI uses internal system codes.

4.          The DOE maintains electronic employment records and employee service histories for DOE employees ("DOE employment records"). DOE employment records are kept within a system called NYCAPS, which is operated by the City of New York for all DOE and City employees. DOE employment records are only visible to the DOE and reflect employees' dates of employment, titles held, and various changes in active employment status.

5.          In addition, DOE has codes within NYCAPS designed to engender special attention should an individual seek employment, re-employment, or change titles with the DOE. Such a code might be used where, for example, an employee left DOE employment with a performance issue, had a nomination for employment rescinded, or was the subject of an arrest. This is designed to ensure that prior to any new employment or new title within DOE, the employee's application undergoes further review by OPI. These types of codes have been colloquially referred to as "problem codes." These codes are only visible to internal DOE Human Resources staff, and the underlying basis for such code is only accessible by OPI.

8.          Separately, DOE implemented an internal NYCAPS code specific to the Commissioner of Health Order mandating vaccination of DOE employees ("Vaccination Mandate"). This code remains visible to only OPI staff to ensure vaccination status was

reviewed prior to any return of an employee placed on a leave without pay due to non-compliance with the Vaccination Mandate. A DOE employee would not have a "problem code" in their service history as a result of any non-compliance with the Vaccination Mandate.

9.        In this instant case, Natasha Solon was placed on leave without pay due to non-compliance with the Vaccination Mandate, and returned to service once compliance with the Vaccination Mandate was confirmed. At no point did Natasha Solon have a "problem code" in her service history as a result of her non-compliance with the Vaccination Mandate nor was there ever any code in her service history arising out of her vaccination status visible to anyone outside of OPI.

Dated:        May 27, 2022
              New York, New York

                              By: _____
                                  Mallory O. Sullivan
                                  Deputy Director
                                  Office of Employee Relations

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                                    :
MICHAEL KANE, et al.,                               :
                                                    :
                          Plaintiffs,               :
                                                    :
          - against -                               :    Case No.  21-cv-7863 (VEC) (Lead)
                                                    :
BILL DE BLASIO, et al.,                             :
                                                    :
                          Defendants.               :
------------------------------------------------------------X
                                                    :
MATTHEW KEIL, et al.                                :
                                                    :
                          Plaintiffs,               :
                                                    :
          - against -                               :    Case No.  21-cv-8773 (VEC)
                                                    :
THE CITY OF NEW YORK, et al.,                        :
                                                    :
                          Defendants.               :
------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

## First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem** PR" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**Second False Assertion in Sullivan Declaration**

9.  The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

### Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

    June 3, 2022                                Respectfully submitted,

                                                Barry Black /
                                                Nelson Madden Black LLP
                                                *Attorney for Plaintiffs*
                                                475 Park Avenue South, Suite 2800
                                                New York, NY 10016
                                                (212) 382-4303

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X :

MICHAEL KANE, et al.,                            :
                                                 :
                              Plaintiffs,        :
                                                 :
                 - against -                     :   Case No.  21-cv-7863 (VEC) (Lead)
                                                 :
DE BLASIO et al.,                                :
                                                 :
                              Defendants.        :
-------------------------------------------------X :

MATTHEW KEIL, et al.                             :
                                                 :
                              Plaintiffs,        :
                                                 :
                 - against -                     :   Case No.  21-cv-8773 (VEC)
                                                 :
THE CITY OF NEW YORK et al.,                     :
                                                 :
                              Defendants.        :
-------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.   My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.   I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.   I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.    When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.   I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.   I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.   I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13.    Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14.    I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15.    The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16.    Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17.    At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18.    Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.     I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.     In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 3, 2022

                              *Betsy Combier*
                              By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ██████████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<hnorton@uft.org>, Kking@uft.org <Kking@uft.org>. dcampbell@uft.org <dcampbell@uft.org>


PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine
mandate leave. It was placed there the day you went on the leave. Our central offices placed this code
on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric

5. In October, 2021, I was involuntarily suspended for failing to get vaccinated in violation of my sincerely held religious beliefs.

6. After the Second Circuit held that the DOE's religious exemption policy was unconstitutional, I was able to apply for reconsideration by the Citywide Panel. The email sent to me stated that we did not need to submit anything because they would rely on the original material.

7. I received no response for months. Meanwhile my situation became desperate.

8. I depleted all of my savings, my son had to take a leave of absence from school because I could not pay the parental portion of tuition, and my children and I were running out of food, and on the brink of losing our home.

9. I owed over $2,000 in heating bills.

10. I applied to over sixty jobs during this period. Despite my extensive qualifications and spotless record, few positions called me back, and none offered me a job.

11. Finally, during an interview in Westchester, the woman conducting the interview took pity on me. She told me she liked me and wished she could hire me.

12. However, she said she had to be honest with me – neither she nor anyone else would be able to hire me.

13. I asked why. She said that there was a "problem" code in the system flagging my name. Outside schools cannot see the reason for the code, other than there is a problem flagged indicating not to hire. Examples she gave me of typical problem codes arose from robbery and other serious misconduct.

14. I have a spotless record and was shocked to find out about this code.

15. I investigated further and learned that the internal records at the DOE showed the reason for the problem code was that I was not vaccinated.

16. My situation grew more desperate every day, and it soon became clear that I would get no other work while this code remains.

17. Finally, to save my family and our home, I took the vaccine, which is against my sincerely held religious beliefs.

18. Within twenty-four hours of submitting my paperwork to the DOE, I was reinstated, and the problem code was removed.

19. Even though I felt I had no choice, this decision has been deeply traumatic and continues to cause irreparable harm.

20. I pray every day for help to overcome my anger, pain, and guilt for having to violate my faith.

21. The experience continues to impact me and to cause me serious distress.

22. I do not feel safe at my job. I do not feel safe in society.

23. The fact that the courts would continue to uphold this brazen unconstitutional condition and fail to intervene to protect us as we lose everything we have worked so hard to achieve continues to shake my faith in this country.

24. If, as the Second Circuit admitted, the DOE violated the Constitution, how can this Court or any other continue to allow the DOE to continue to harm so many of us for not taking the vaccine?

25. I am vaccinated now, but when the inevitable booster requirement comes, I will have to go through all of this again. I do not think that I can violate my faith again. The harm it caused me to do it to save my family was too severe.

26. I only hope that this Court intervenes before that occurs, or at least intervenes before more of my colleagues are forced to be violated the way I was.

27. This is spiritual rape. There is no other way to put it. I did not consent to this.

28. This Court must help us to stop the continuing injustice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      New York, New York
            May 20, 2022

By: Natasha Solon

From: **Beth A. Norton** <BNorton@uft.org>
Date: Thu, Jul 28, 2022, 12:36 PM
Subject: RE: Questions about voluntary resignations and follow ups
To:
Cc: Michael Sill <MSill@uft.org>, Michael Mulgrew <MMulgrew@uft.org>, Tanisha Franks <TFranks@uft.org>, Karen King <KKing@uft.org>

The arbitration award doesn't "expire," I am not sure what you mean by that.

As the language you quoted from the waiver indicates, you will be deemed to have voluntarily resigned your position with the DOE on September 6 if you are not, at that time, in compliance with the health order (vaccinated with 2 shots of Pfizer or Moderna, or 1 shot of J&J). This will be treated as a traditional resignation, it is not a termination. You will be permitted to cash out your CAR and vacation days at the contractual rates. The code on your file indicates that you are not vaccinated, that will not be lifted until such time as you are vaccinated.

You should be receiving an email from the DOE in the next week or so asking for your intent for the fall.

At this time there is no indication that the vaccine mandate will be lifted, so if you wish to return you would have to comply with the health order. If that changes we will let you know.

Regards,

**Beth A. Norton**
General Counsel
United Federation of Teachers
52 Broadway 14th Floor
New York, NY 10004
212-701-9420

From: **Grievance - Do Not Reply** <Grievance-noreply@uft.org>
Date: Fri, Mar 22, 2024 at 12:26 PM
Subject: Juszczak, Helena - Q74479 - Grievance Department Decision
To: helenaj7@gmail.com <helenaj7@gmail.com>

Dear Ms. Juszczak,

You filed a grievance regarding your termination from the Department of Education (DoE) for failure to comply with the vaccination mandate. The Union's position was that the DoE could not do this, and we sent your grievance to the Chancellor. Subsequent to filing the grievance, the DoE notified the UFT that it refused to schedule your grievance. We notified you of this development on or about May 3rd 2022. That letter stated:

*"The Department of Education (DoE) has officially informed us that they will not be scheduling Step 2 conferences for those who filed grievances protesting being terminated for not complying with the vaccine mandate. The DoE stated that compliance with the order is a condition of employment and therefore they are not required to provide contractual due process.*

*The Union disagrees with the DoE's interpretation and has filed an action in State Court challenging the DoE's position. Should the judge find in our favor, your grievance, (which was filed timely to preserve grievance timelines), will be heard at a later scheduled date.*

*We understand your disappointment in not having your grievance heard and will keep you abreast of the decision once rendered by State Court."*

Subsequent to the May 3rd letter, the Union and other parties brought several court cases concerning the due process rights of city workers who have not complied with the mandate, but the courts have consistently ruled in favor of the City. As a result, the UFT Grievance Department has determined that your grievance cannot be successfully pursued at arbitration and has no contractual basis to seek back payment for employees who were terminated due to the vaccine mandate.

On February 10, 2023, the City of New York officially dropped the Vaccine Mandate as a condition of employment. This means that any non-vaccinated individual may apply to be hired and employed by the City's schools.

We understand that this is not the outcome you sought in filing your grievance**,** however, there is no further action we can take at this time.

Sincerely,


Mark B. Collins
Director
UFT Grievance/Arbitration Department

**From: Helena J** <helenaj7@gmail.com>

10/9/2025(TH)3:38pm 8m called DOE IT Help Desk (DIIT Help Desk) 718-935-5100

-virtual assistant "eureka" with dial pad options then spoke to Alex who I gave EIS number to and he said I'm not on active status. And I have to be on active status for this issue to be resolved. He gave me two options said call HR Connect: 718-935-4000 & tell them I need access to email but DIIT service cannot do it until I'm on Active Status. He said call time is long but stay on the line.

He said it's up to a school to re-nominate me or not

-My options: Go to a school of interest and request a nomination from a principal

-If nominated by a Principal they put it in the system which is called Galaxy which is like a budget system that helps organize and figure out what your pay out on payroll is once you are hired. (this was explained to me when I asked what Galaxy system is)

or/and

A Survey on the DOE website (HR connect sent one to me after the call in my email they had on record Hj7 @ gmail)

-The survey leads to a pool I would be put in to call or email me with an application and instructions if a school takes interest and reaches out to me.

-After the call the survey will be sent to my email