**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____x

**HELENA JUSZCZAK,**

Plaintiff

**Docket No: 24-cv-00850 (OEM)(CHK)**

-against-

**THE NEW YORK CITY DEPARTMENT OF**
**EDUCATION and THE CITY OF NEW YORK**

Defendants

_____x

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

HELENA JUSZCZAK
*Plaintiff Pro Se*
70-36 67 Place Apt. 1L
Glendale, NY 11572
917-446-6476

1

## PRELIMINARY STATEMENT

Plaintiff HELENA JUSZCZAK ("Plaintiff") submits below her opposition to the Defendants' Motion To Dismiss and argues that Defendants have submitted no facts in support of their specious claims and have made no arguments disputing Plaintiff's alleged causes of action sufficient to dismiss her Amended Complaint ("AC"). Plaintiff's Amended Complaint was based upon an *as-applied* challenge to the COVID Vaccine Mandate, and not the Mandate itself.

In her AC, Plaintiff argues that Defendants have pursued for many years a scheme of religious discrimination spanning all City agencies, including the Department of Education. Plaintiff successfully pled claims of discrimination and retaliation in violation of her Fourteenth Amendment rights to Free Exercise of her religion and the Establishment Clause. She also successfully pled a right to Section 1983 and First Amendment freedom of religion, and a claim that Defendants failed to accommodate her sincere religious beliefs. Defendants' Motion To Dismiss is a thinly-veiled attempt to reframe Plaintiff's case into something that it is not and redirect this Court's attention from the egregious and unscrupulous actions and behaviors of the Defendants. Defendants' papers ignore the four corners of Plaintiff's AC and disregard the facts in the detailed factual allegations which are to be accepted as true. In the case discussed here, Defendants grossly mischaracterize controlling law. The decision by the Second Circuit in *Kane v. De Blasio, 19 F.4th 152 (2d Cir. 2021)*, held that plaintiffs not only stated viable free exercise claims but were likely to succeed and entitled to  preliminary injunctive relief.

More recently, in *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2024) ("NYFRL"), the Second Circuit also reversed dismissal of two plaintiffs'

2

claims, holding they plausibly pleaded free exercise violations. The decisions in both these cases were made after the Scheinman Arbitration Award issued September 10, 2021 (EX. A, Amended Complaint "AC") was declared unconstitutional and discarded in November 2021. (AC, EX. G). In NYFRL, the Second Circuit held that Natasha Solon stated a constitutional claim because she never received a Citywide Panel answer, leaving her subject only to the admittedly unconstitutional Scheinman Award process. This is the same process that was used to terminate Plaintiff in this case. Plaintiff applied to the Citywide Panel, but never heard back from them. **EXHIBIT L**.

Scheinman's Award (AC, EX. A) created the process for terminating Plaintiff here, starting with a forced involuntary and punitive leave/suspension without pay, "LWOP", which left Plaintiff without her salary, her job and in the "Problem Code" database for misconduct. A finding of this Award being unconstitutional in 2021 means that the process used to remove Plaintiff from her job and then terminate her was unconstitutional. Plaintiff was deprived of her right to have a dialogue on her request for a religious accommodation for no lawful reason. This failure to accommodate must be remedied and Plaintiff requests relief from this injustice. Plaintiff's appeals were never heard, denying her the Constitutional rights under 42 U.S.C. 1983, the 1st and 14th Amendments, Human Rights Law NYSHRL, NYCHRL, and Civil Service Law 75-b. Plaintiff appealed her denial to the Citywide Panel on December 3, 2021, but never received any response. At all times Defendants were acting under color of law. Defendants' Motion To Dismiss must be dismissed in its' entirety.

Plaintiff requests that each and every argument, cause of action, background facts and Exhibits in her AC be incorporated in full into the arguments made here by reference. The

3

Exhibits already submitted to this Court in support of her causes of action are: **EXHIBITS A-K.** Attached to this Opposition are **EXHIBITS L-Q.**

<u>**STANDARD OF REVIEW**</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must. contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the pleadings must contain enough facts to state a claim to relief that is plausible on its face." Dellatte v. Great Neck Union Free Sch. Dist., No. 10-cv-4348, 2012 WL 164078, at *1 (2d Cir. Jan. 20, 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The court must accept all factual allegations in the AC and draw all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts asserted within the four corners of the AC together with the documents attached to the AC as exhibits and any documents incorporated in the AC by reference. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp**.**, 602 F.3d 57, 64 (2d Cir. 2010).

<u>**ARGUMENT**</u>
<u>**NOTICE OF CLAIM REQUIREMENTS ARE NOT APPLICABLE TO §1983 SUITS BROUGHT IN FEDERAL COURT and HUMAN RIGHTS LAWS HAVE A 3-YEAR STATUTE OF LIMITATIONS**</u>

NYCHRL and NYSHRL are not time-barred, and no Notice of Claim is required when a public interest is implicated. Plaintiffs' NYSHRL and NYCHRL claims are not barred for several reasons. First, Human rights claims require no notice of claim. *Caputo v. Copiague Union Free*

*Sch. Dist.*, 218 F. Supp.3d 186 (E.D.N.Y. 2016). Second, public interest actions, such as this case, addressing systemic discrimination, are exempt. *Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal Bd.*, 35 N.Y.2d 371 (1974). Third, no notice is required against the City, and the City is at least jointly liable as it was ordered by the courts and arbitration award to provide accommodation, participated in the unlawful Scheinman Arbitration Award procedure, and voluntarily agreed to take charge of the remediation efforts through the Citywide Panel process after the Scheinman Award process was found unconstitutional. *Margerum v. City of Buffalo*, 24 N.Y.3d 721 (2015).

New York's Notice of Claim requirements were applicable to §1983 suits in state court but not federal court prior to Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302. See, e.g., Brandon v. Board of Education, 635 F.2d 971, 973 n. 2 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); Courtemanche v. Enlarged City School District, 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988); Burroughs v. Holiday Inn, 621 F.Supp. 351, 353-55 (W.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653, 656-59 (E.D.N.Y. 1985); Paschall v. Mayone, 454 F.Supp. 1289, 1298 (S.D.N.Y. 1978). Felder v. Casey noted that although the Supreme Court itself "ha[d] never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." 487 U.S. at 140, 108 S.Ct. at 2307.

In Brandon, a ruling was upheld that compliance with the state's notice-of-claim provision was not a precondition to the district court action. Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice.

Human Rights Law (HRL) provides:

5

"It shall be an unlawful discriminatory practice for an employer . . . to impose upon a person as a condition of . . . retaining employment any terms or conditions, compliance with which would require such person to violate . . . such person's creed or religion, . . . and the employer shall make reasonable accommodation to the religious needs of such person."
(Administrative Code of City of New York § 8-107[3][a]).

A reasonable accommodation is "such an accommodation to an employee's . . . religious observance or practice as shall not cause undue hardship in the conduct of the employer's business" (Administrative Code § 8-107[3][b]). A "determination that no reasonable accommodation would enable the person . . . to satisfy the essential requisites of a job . . . may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue" (Administrative Code § 8-107[28][e]). Plaintiff never heard any reason for the denials of her religious accommodation request, yet other DOE employees received their denials. See **EXHIBIT M.**

On November 17, 2023, Governor Hochul signed State Assembly Bill A00501 into law, extending the statute of limitations for discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL") from one year to three years. Here, at the latest, Plaintiff's claim accrued on the date she received the termination notice on February 11, 2022.; *see also Ferraro*, 2017 WL6343686, at *3 ("Accordingly, plaintiff's claim accrued . . . when he was notified of his termination."). Plaintiff commenced this action on February 11, 2025. Plaintiff found out in February 2023 that she had been placed on a "Problem Code" without her knowledge or consent. (AC, pp. 2,3,8,10, 15; EX. I). This Problem Code permanently blocked her from her salaried position at the Department of Education, and prevented her from getting reinstated at her former position and salary. In October and November 2025 she however, she found out that she had remained on the Problem Code when she was turned down from getting jobs at the Department of Education. Plaintiff filed a Notice of

6

Claim on January 8, 2026 against Defendants, citing the continuing wrong of the Problem Code and misconduct charge being placed on her  personnel file permanently because she requested a religious accommodation.

NYC Human Rights Law (NYCHRL)  and NY State Human Rights Law (NYSHRL) strongly address religious accommodations, requiring employers to provide "reasonable accommodations" ensuring equal access to jobs unless it's an "undue hardship" for the employer, with a key focus on a good-faith "cooperative dialogue" process. Employers must discuss requests with employees in good faith to find a suitable accommodation, not just deny them outright. Here, Defendants never entered into a cooperative dialogue, never offered to, and never suggested any accommodation whatsoever.

Defendants cannot argue that Plaintiff's claim to NYSHRL and NYCHRL jurisdiction was time-barred. First, there were no changes made to Plaintiff's conditions of employment, even to allow a vaccine in the contract – which did not happen. Secondly, as stated above, a Problem Code for misconduct was secretly placed on her personnel file, and the damages are continuing. Until today Plaintiff is a charged employee, guilty of misconduct, although she was given no notice and no pre-deprivation or post-deprivation due process hearing. Her requests for accommodation to remain working remotely were denied outright or never responded to. The violations of NYSHRL and NYCHRL were continuous and never-ending.

In a June 18, 2020, the Appellate Division of the First Department in Hosking v. Memorial Sloan Kettering Medical Center, 186 AD3d 64 (l st Dep' 2020) held that a reasonable accommodation requires a "good faith interactive process," clarifying the individual needs of the employee and the business, and the appropriate accommodation. The New York State Human Rights law requires "at least some deliberation between the parties about the viability of an accommodation,

while the New York City Human Rights law, places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. See, Jacobsen v. New York City Health and Hospitals Corp., 22 NY3d 824 (2014).

The New York City Human Rights Law ("NYCHRL") requires a more rigorous process than the State Human Rights Law. Courts must construe the "NYCRL" broadly in favor of discrimination against plaintiffs, to the extent that such a construction is reasonably possible." Albino v. City of New York, 16 NY3d 473 (2011). Unlike the NYSRHL, the NYCHRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business. Jacobsen v. New York City Health and Hospitals Corporation, 22 NYS3d 824 (2014).

The record clearly indicates that here, Defendants' administration of the accommodation requests proceeded without any "cooperative dialogue," no facts on any undue burden, and immense harassment and discrimination against Plaintiff for her Catholic religious beliefs.

Cooperative dialogue presumes an interactive process/engagement wherein information is exchanged by the parties in a manner where each party is afforded the opportunity to be heard by the other. Such interaction need not be face to face and may be in written form as long as the needs of the person requesting the accommodation understands and knows of the potential accommodations.

It was recently revealed in Masciarelli v NYC Dep't of Educ., 22-cv-7553, Dkt 76-1, 5/14/25, that Katherine Rodi, Department of Education's Director of Employee Relations, was appointed the Director of a secret "General Committee" where all submissions in September-November

8

2021 to the DOE's Solas email were denied outright *without review.* The arbitration under

Martin Scheinman was declared unconstitutional in November 2021 (AC, EX. G) because of its'

stated favoritism for some religious beliefs over all other religions and religious practices.

In *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), the Second Circuit held the accommodation

appeals process was not neutral or generally applicable and ordered the City to provide fresh

review by a "Citywide Panel" for de novo review under Title VII, NYSHRL, and NYCHRL

standards. The Citywide Panel did not comply and held to one standard, a mysterious "undue

burden" that had no particulars. (Ex.M)

In August 2022, unvaccinated employees already terminated were offered reinstatement if they

got vaccinated. In 2023 and 2025, Defendants offered reinstatement only if Plaintiffs waived

their right to sue them, and most titles were given no option but to start at the beginning of their

careers, at a lower salary -with a problem code in their record – if they agreed to be reinstated.

Plaintiff has never received any remedy for the destruction of her career.

Defendants adopted a facially unconstitutional accommodation policy favoring Christian

Scientists and excluding Catholics, Jews, and others based on unconstitutional criteria (e.g.,

vaccinated "religious leaders"). The City and DOE employed discriminatory policies rather than

good faith review to restrict accommodations. Out of this unlawful and highly arbitrary

discriminatory process, Defendants have stated that more than 165 employees met the favored

criteria and were accommodated, but Plaintiff was not, without any reason provided. The animus

was particularly strong against anyone who was a practicing Catholic, such as Plaintiff.

This deprivation of a lawful procedure was intentional, acted on under color of law, and pursued

in bad faith.  Defendants omitted information of their long-term policy in accommodating

employees according to law. This matter shows that Defendants not only did not engage in a

9

dialogue about the accommodations already given to them, but punished Plaintiff as guilty of misconduct for applying for exemption/accommodation.

In Wilson v. Garcia, the Supreme Court, in addressing the borrowing provision of the civil rights statute, determined that choosing "a simple broad characterization of all Section 1983 claims" better suited the purpose of the statute rather than choosing the most analogous state statute for a particular claim.  (Id. at p. 272, 105 S. Ct. at p. 1944) If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim… different statutes of limitations would be applied to the various Section 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case.  Wilson v. Garcia, supra, 471 U.S. at pp. 273-74, 105 S.Ct. at pp. 1945-46). The Court concluded that in light of "the federal interests in uniformity and certainty, section 1983 was meant to be given a broad and simple interpretation, and the Courts were directed "to select in each State, the one most appropriate statute of limitations for all section 1983 claims."  (Id. at p. 275, 105 S.Ct. at p. 1948).

The statute of limitations issue was further refined in a Supreme Court decision determining where two or more statutes of limitations exist within a state for certain enumerated torts, as in New York, the appropriate statute to apply is the residual or general personal injury statute. Meiselman v. Richardson, 743 F. Supp. 143 (EDNY 1990), citing Owens v. Okure, 488 U.S. 235, 109 S. Ct. 573, 102 L.Ed. 594 (1989).  Specifically, the Court in Owens concluded that the three-year personal injury statute, CPLR 214(5), was better suited to govern section 1983 actions than the one-year statute of limitations for certain intentional torts specified by CPLR 214(3). The Court indicated that it was fulfilling the goals set forth in Wilson to "end this 'conflict, confusion, and uncertainty."  (Owens v. Okure, 109 S. Ct. at p. 576, quoting Wilson v. Garcia,

10

471 U.S. at p. 266, 105 S.Ct. at p. 1941), by applying "the one most analogous state statute of limitations" to all section 1983 claims.  Meiselman v. Richardson, 743 F. Supp. 143, 146 (EDNY 1990).  In Owens, as in Wilson, the Court rejected determining the statute of limitations based on the type of theory of action before the court and its similarity to a particular state claim.  Id. Here, the federal law is applicable because of the Supremacy Clause; the three-year statute of limitations should apply. See Purcell v. New York Institute of Technology, 931 F.3d 59 (2nd Cir. 2019), where the Second Circuit reversed the District Court because the lower court mistakenly held that a Title VI race claim against a school had to be commenced via an Article 78 proceeding and thus the four-month statute of limitations applied.  The Second Circuit held that federal law preempts state law and the three-year statute of limitations applied.

 As a direct and proximate result of Defendants' failure to accommodate, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial. These actions by Defendants are deliberate, misleading and made in bad faith. No hearing was ever held where Plaintiff could be heard on her reasons for not getting vaccinated against COVID. She has been denied her procedural and substantive due process.

The dismissal of Plaintiff's NYSHRL and NYCHRL claims as time-barred fails to account for accrual and continuing-violation principles. Plaintiff alleges not only termination in 2022, but refusal of reinstatement in 2023, continued "Problem Code" designation, and ongoing foreclosure from employment in 2025—conduct within the limitations window. At minimum, factual disputes concerning when the claims accrued and whether later adverse acts occurred

11

preclude dismissal at the pleading stage. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Additionally, New York recognizes a public interest exception to the Notice of Claim requirement for claims involving Constitutional violations, discrimination, and systemic governmental misconduct. Plaintiff's claims arise from a vaccine mandate affecting thousands of public employees and implicating constitutional and civil rights concerns of clear public import. Courts decline to impose strict notice requirements in such circumstances, especially where the municipality received actual notice and suffered no prejudice. Defendants have been given adequate notice of her deprivation of rights and Defendants have never responded.

Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice. See Day v Moscow 955 F.2d 807 (2nd Cir 1992). Thus, Plaintiffs' claims should not be not time barred, and Human Rights Law has a 3-year statute of limitations.

Based on the foregoing, Defendants failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religious beliefs, and unlawfully discriminated against her in violation of the 1st and 14th Amendments; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law. Defendants' Motion on this point must be dismissed.

### PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUPPORT HER CLAIM OF DISCRIMINATION

Plaintiff's Amended Complaint cites causes of action against the Defendants who, under color of law, denied her the due process she was entitled to under  42 U.S.C. § 1983, First and

Fourteenth Amendments to  the United States Constitution, Civil Service Law Section 75(b), and Human Rights Law ("SHRL and CHRL"). Yet at the same time, Defendants granted religious accommodations to hundreds of similarly situated NYC DOE employees. See EX.M.

The discrimination occurred through three distinct phases: First, DOE denial by Solas, the HR Computer system. The DOE denied 100% of applications through an auto-generated system on the basis that it was allegedly "more than a minimal burden" to provide any accommodations. No human being reviewed a single application, and no cooperative dialogue was offered before the auto-generated denials were sent out; Second, an unconstitutional Appeal process set up to be heard by Scheinman Arbitration and Mediation Services (SAMS), which also denied everyone and was declared constitutionally "unsound" by the Court of Appeals. (AC, Ex. G)

The criteria for discrimination under a *prima facie* Human Rights Law claim includes: Plaintiff (1) is a member of a protected class (religion"); (2) was qualified for her position and satisfactorily performed her duties; (3) suffered an adverse employment action (leave without pay, termination, problem code); and (4) the circumstances surrounding that action give rise to an inference of discrimination (hundreds of employees were approved their religious accommodation appeals). In this matter, a review of Plaintiff's AC and here shows conclusively that Plaintiff was discriminated against as a paraprofessional claiming religious accommodation pursuant to the First Amendment, and Free Exercise Clause.

Plaintiff submitted her sincere religious beliefs to the right place in a timely fashion, yet was denied without any lawfully recognizable reason. According to Law and Statute, Plaintiff did not have to "prove" her beliefs in the first place. Others were granted their accommodations, and although the numbers are not exact, the Defendants readily admit to several hundred being

13

allowed to work remotely without getting vaccinated. They used "undue burden for just about everyone except the favored few, but no rational review can determine why these individuals were approved. See Ex. L,  and Religious Statement of RF, **EXHIBIT N**. RF stayed on salary while working, and after the mandate ended in 2023, went back to his job.

The chaotic mess of the explosion of inequalities of law and vaccinations continue today.

The media have highlighted the hundreds of employees who were getting exemptions:

**City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees**
https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-publicschool-employees
 Gothamist, Sept. 24, 2021

**COVID-19 exemptions for teachers, principals extended through school year** By Selim Algar, Published Nov. 20, 2020, 5:02 p.m. ET
https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

**NYC teachers with vaccine exemptions are being treated like pariahs**
By Melissa Klein, New York Post, Published March 5, 2022
https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

At no point was the DOH Order for DOE employees neutral or generally applicable. Also, at no time did the COVID Vaccine Mandate change Plaintiff's terms of employment.

Defendant has neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Plaintiff argues here that the hostility by Defendants toward the Plaintiff in this matter defeats neutrality at every level of review, which suggests pre-textual discrimination.

The U.S. Supreme Court has ruled that suspension without pay, exactly the same as LWOP, is retaliatory discrimination: *Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006)* ("that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay").

14

As Plaintiff's only options to establish her Constitutional rights under the 14th Amendment due process pursuant to Section 1983 was to submit to the Scheinman panel, SAMS, or the Citywide Panel, which never really reviewed any religious Appeal, and never considered Groff v Dejoy criteria. The Plaintiff has pleaded facts stating a plausible action that Defendants have violated the Free Exercise Clause. Under the Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, "[g]overnment enforcement of laws or policies that substantially burden the exercise of sincerely held religious beliefs is subject to strict scrutiny." Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002).". In this case, for the reasons stated throughout this letter, Defendants' policies imposed on Plaintiff burdened the exercise of her sincere Christian beliefs.

The Supreme Court case the EEOC v. Abercrombie & Fitch Stores, Inc. 575 U.S. 768 (2015) concluded that "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions. The First Amendment to the Constitution protects Plaintiff's free exercise of religion and mandates state accommodation for members of religious groups who object to the vaccinations on religious grounds. The Free Exercise Clause recognizes and guarantees Americans the ''right to believe and profess whatever religious doctrine [they] desire.'' Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 877 (1990).

"The Defendant never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendants' concern for "a safe environment for in-person learning." The Free Exercise Clause also ascertains that government may not attempt to regulate religious beliefs, compel religious beliefs, or punish religious

15

beliefs. Sherbert v. Verner, 374 U.S. 398, 402 (1963); Torcaso v. Watkins, 367 U.S. 488, 492–93, 495 (1961); and United States v. Ballard, 322 U.S. 78, 86 (1944).

Government may not discriminate against or impose special burdens upon individuals because of their religious beliefs or status. The Constitution's protection against government regulation of religious belief is absolute; it is not subject to limitation or balancing against the interests of the government. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; Sherbert v. Verner, 374 U.S. 402 (1963).

''If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith herein.''. West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

The Free Exercise Clause protects beliefs rooted in religion, even if such beliefs are not mandated by a particular religious organization or shared among adherents of a particular religious tradition. Frazee v. Illinois Dept. of Employment Security, 489 U.S. 829, 833–34 (1989). As the Supreme Court has repeatedly counseled, ''religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.'' Church of the Lukumi Babalu Aye v. Hialeah, 508 U.S. 520, 531 (1993) They must merely be ''sincerely held.'' Frazee v. Illinois Dept. of Employment Security, 489 U.S. 834 (1989). Importantly, the protections guaranteed by the Free Exercise Clause also extend to acts undertaken in accordance with such sincerely held beliefs. That conclusion flows from the plain text of the First Amendment, which guarantees the freedom to ''exercise'' religion, not just the freedom to ''believe'' in religion. Employment Div. v. Smith, 494 U.S. 877 (1990); Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 716 (1990); McDaniel v.

16

Paty, 435 U.S. 627 (1978; Sherbert v. Verner, 374 U.S. 403–04 (1963); and Wisconsin v. Yoder, 406 U.S. 205, 219–20 (1972).

A law is not neutral if it singles out particular religious conduct for adverse treatment, treats the same conduct as lawful when undertaken for secular reasons but unlawful when undertaken for religious reasons, applies uncalled for restrictions on religious conduct''; or ''accomplishes . . . a 'religious gerrymander,' an impermissible attempt to target [certain individuals] and their religious practices.'' Id. 538. A law is not generally applicable if ''in a selective manner [it] impose[s] burdens only on conduct motivated by religious belief,'' Id 543., including by ''fail[ing] to prohibit nonreligious conduct that endangers [its] interests in a similar or greater degree than . . . does'' the prohibited conduct, id., or enables, expressly or de facto, ''a system of individualized exemptions,'' as discussed in Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 884 (1990); see Church, 537. ''Neutrality and general applicability are interrelated, . . .[and] failure to satisfy one requirement is a likely indication that the other has not been satisfied.'' Id, 531. A law that disqualifies a religious person or organization from a right to compete for a public benefit—including a grant or contract—because of the person's religious character is neither neutral nor generally applicable. See Trinity Lutheran Church of Columbia, Inc. v. Comer, Director, Missouri Department of Natural Resources, 582 U.S. (slip opinion pages 9–11) (2017).

The Amended Complaint sets forth a prima facie case of discrimination because the allegations viewed in a light most favorable to the Plaintiff shows that Plaintiff was terminated because of her sincere religious beliefs. Specifically, Defendants have failed to prove that their COVID Vaccine Mandate (CVM) and Plaintiff's termination were lawfully executed under

17

prevailing policy and the Constitution. Here, a protected right was discarded, and a hearing never took place that fairly reviewed Plaintiff's religious Appeal. Instead, the DOE employed discriminatory policies rather than good faith review to restrict accommodations.

On March 19, 2026, Plaintiff became aware of a Memo wherein the religious animus of the Defendants can be clearly seen in redacted emails sent to/from members of DOH, City government, OLR, and Test and Trace Corps., as well as Martin Scheinman's arbitrators in September-October 2021. The focus of this group was to help arbitrators deny the religious exemption appeal of a person who refused the COVID vaccine due to their beliefs against the use of fetal cells, and/or their Pope or religious leader opposed abortion. Here is a quote from Steve Banks:

"Now that the UFT exemption requests have been coming in for several days and the cases have been reviewed at the DOE, it turns out that upwards of 2/3 of the exemption requests are religious not medical. But there is a medical aspect to the religious requests that I could use some help on. Many of the religious claims cite that fetal tissue and/or certain animal products were used in the research, development, and/or actual formula for the COVID vaccines. Since many of these cases are going to labor arbitrators, there is a need for factual information for the arbitrators to reference. It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why this is BS. The purpose of the document would be for the arbitrators to reference, and I would vet it with the UFT first. So I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion and/or consumption of certain animals is not

18

consistent with the science of the virus. In
some areas, there may be a distinction
between the 3 brands of vaccine and I think as
long as one is available the claim should also be
denied.
Is this something you guys could pull together
by late morning tomorrow?
Thanks,
Steven Banks
First Deputy Commissioner & General Counsel
NYC Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007
(212) 306-7238"

The entire 8-pages of this stunning set of emails can be seen in **EXHIBIT O.** Please note that the

email uses the term "exemption", and the purpose is to create a foolproof way to deny religious

exemptions/religious based accommodations brought before the labor arbitrators who worked for

Martin Scheinman and his Company, the Scheinman Arbitration and Mediation Services. The

memo created by the people in these emails are directly attacking religious beliefs in order to

deny accommodations and declare "undue burden". What is most shocking is the collaboration

of DOH Commissioner David Chokshi, City government and Steve Banks in the creation of a

"UFT Accommodation Process" designed to deliberately deny all appeals submitted to them.

"When there is no plausible explanation for religious discrimination other than animus, it is

subject to strict scrutiny, regardless of whether the government employer admits that its actions

were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS

OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No.

1:21-CV-02637-RM-KMT., May 7, 2024). The fact that there are no actions of the Citywide

Panel that could be aligned with Title VII , Human Rights Law, and *Groff v Dejoy*, is

troublesome, but not enough, it seems, for either Defendants or this Court to worry about or even

19

pay attention to. These emails support a predetermined anti-exemption approach. The strongest line is Steven Banks asking for a doctor-signed document to tell arbitrators why these religious claims were "BS." The City was not neutrally evaluating religious requests, but was instead developing advocacy material to defeat Plaintiff.

The emails support a lack of neutrality toward religion, and focus on rebutting religious objections about fetal tissue and animal products. Thus the review process was not a sincere, individualized accommodation review, but an effort to discredit certain religious beliefs. The emails support pretext. If the City says requests were fairly reviewed on an individualized basis, this chain cuts the other way. It suggests they were developing a citywide strategy and memo for negotiations, hearings, and arbitrators before or during the process. The emails  support  a First Amendment/as-applied theory. The chain suggests decisionmakers were examining the content and acceptability of religious objections, rather than just sincerity or operational feasibility. The process was hostile and non-neutral as applied.Even when a law is neutral and generally applicable, government may run afoul of the Free Exercise Clause if it interprets or applies the law in a manner that discriminates against religious observance and practice. The Free Exercise Clause, much like the Free Speech Clause, requires equal treatment of religious adherents. Trinity Lutheran Church of Columbia, Inc. v. Comer 582 U.S. (slip opinion. Page 6) (2017); see also Good News Club v. Milford Central Sch., 533 U.S. 98, 114 (2001), and Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 837, 841 (1995)). The Defendants' Motion To Dismiss must be denied.

**PLAINTIFF HAS SUFFICIENTLY PLED DEFENDANT'S FAILURE TO ACCOMMODATE**

20

Plaintiff properly asserts a statutory accommodation claim in her AC, pleading: (1) sincere religious beliefs conflicting with the Mandate; (2) notice to Defendants; and (3) adverse actions (denials of accommodation, suspension, and terminations). *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006); Marte v. Monetefiore Med. Ctr., No. 22-CV-03491(CM), 2022 U.S. Dist. LEXIS 186884, at *19 (S.D.N.Y. Oct. 12, 2022). All of these have been complied with by Plaintiff. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals without any further details or reason, and terminated her employment.

In Plaintiff's case, it is clear that Defendants operated with  systemic bias, not good-faith accommodation efforts. "Undue hardship", "does not meet the criteria", and no response at all are affirmative defenses which are not resolvable at the pleading stage. Indeed, the COVID Vaccine Mandate ("CVM") never precluded in-person or remote work, and the information provided from the Defendants was that at least 165 employees were accommodated defeats any assertion of undue hardship as a matter of law under statutory standards, where Defendants bear the burden of proof.

Human Rights Law says that the employer must give a reasonable accommodation even if claiming an undue burden. An explanation for the denial, presumably an alleged "undue burden", was never given to Plaintiff  in violation of Groff v Dejoy:  "an employer that denies a religious accommodation [must] show that the burden of granting the religious accommodation would result in "substantial increased costs in relation to the conduct of its particular business."…. very different from a burden that is merely more than de minimis, i.e., something that is 'very small or trifling.'" Also,,"With respect to the new "substantial increased costs" standard, the Court explained that employers must take into account "all relevant factors in the case at hand,

21

including the particular accommodation at issue and their practical impact in light of the nature, size, and operating cost of an employer." (Groff v Dejoy)

Defendants have blatantly ignored all the laws demanding a reasonable accommodation for Plaintiff . Defendants never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendant's concern for "a safe environment for in-person learning." *Ansonia Bd. ofEduc. v. Philbrook,* 479 U.S. 60, 68-69 (1986). It is well-known that the City has an "Absent Teacher Reserve" (ATR) program for substitute teachers in classrooms and remote teaching throughout NYC. **EXHIBIT P.**  In 2021,the UFT sent out a Press Release in saying that the Defendants would give non-classroom work to those employees requesting medical accommodations. See **EXHIBIT Q.**

Defendants never offered a single document or factual evidence that showed any effort towards accommodating Plaintiff, and never gave any rational basis to deny her religious exemption request. The Department totally failed in this duty, although having alternate work locations available. The Motion To Dismiss must be denied in full.

### PLAINTIFF HAS PROPERLY PLED  A VIOLATION OF 1983

Plaintiff was placed on the 'Problem Code' at Defendants Office the Human Resources Office of Personnel Investigations on or about October 4, 2021 without her knowledge or consent. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct or incompetence. Therefore, the New York City Department of Education has considered Plaintiff not getting vaccinated as 'misconduct,' which means that

Plaintiff is unemployable as a teacher in education. There is no reason for this, and no information about how Plaintiff may remove this Code from her fingerprints/file.

By being placed on such a list without Defendants at least affording a hearing violates Plaintiff's due process rights. Here, there is an implied allegation of impropriety and illegality on the part of Plaintiff that seriously impugned her professional reputation and adversely reflected on her record as a teacher and that her ability to find similar employment within her chosen profession has been substantially impaired by respondents' action Board of Regents v Roth, 408 U.S. 564, 573; Bishop v Wood, 426 U.S. 341, 348; Codd v Velger, 429 U.S. 624, 627.

It is the rule that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to her, notice and an opportunity to be heard are essential. Plaintiff's due process rights pursuant to the 14th Amendment of the United States Constitution have been violated.

## PLAINTIFF'S WELL-PLED PLEADINGS ON HER DEPRIVATION OF CONSTITUTIONAL RIGHTS CANNOT BE DISMISSED AT THE PLEADING STAGE

The Defendants recommend dismissal of several claims based on factual assumptions that are contradicted by the record or require further development. At the Rule 12(b)(6) stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). Courts in this Circuit consistently reverse dismissal where the district court resolves factual disputes against the plaintiff at the pleading stage. See McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

Plaintiff alleges that she was subjected to adverse governmental action resulting in professional, financial, and constitutional injury for which she has not been compensated. Her AC attaches and

23

incorporates factual evidence of Defendants' willful, unlawful actions. Whether Plaintiff received a meaningful process, including appeals or access to Citywide Panel review, is a fact-intensive inquiry not suitable for resolution on a motion to dismiss. See Hu v. City of New York, 927 F.3d 81, 92 (2d Cir. 2019) (comparator and procedural details are matters for discovery).

By presuming Plaintiff received the same procedural opportunities as other DOE employees and that existing DOE procedures "in theory" satisfied constitutional requirements, Defendants resolved disputed facts and drew inferences in their favor. This is improper at the Rule 12 stage. See McKenna, 386 F.3d at 436 ("On a Rule 12 motion, the defendant cannot defeat plaintiff's claim by submitting its own version of the facts.").

At this stage Plaintiff need not provide Defendants any details concerning comparator information and procedural evidence. Hu, 927 F.3d at 88–90 ("a plaintiff need not plead detailed comparator allegations to survive a motion to dismiss").

Because Defendants applied an incorrect pleading standard, resolved disputed facts, and drew inferences against Plaintiff, dismissal of these claims is improper under Rule 12(b)(6). Plaintiff's claims should proceed to discovery.

## **CONCLUSION**

Plaintiff has successfully pled in her AC that the Defendants failed to provide a reasonable accommodation and did not give her the due process she was due pursuant to Constitutional law. Only new hires to the Department of Education had to get the vaccine as a condition of employment. The claims contained within the four corners of Plaintiff's AC go straight to the heart of a substantive due process claim. The very idea that a person's livelihood which is supposed to be determined through a fair evaluation of an educator's job performance, is denied in open and blatant retaliation for requesting an accommodation is outrageous and

24

unconstitutional in the widest sense. There is no reasonable interpretation of the actions by Defendant alleged within the Complaint that could or should be excused as negligence or mistake.

Plaintiff's termination was pre-planned and part of a strategy to deny state and Federal laws and rights to certain employees of the Department. Even if such a definition is up for debate, it is inapplicable in a motion to dismiss stage and a simple reading of the AC amply demonstrates that conscience shocking behavior has been sufficiently alleged to permit this cause of action to continue through to discovery as a matter of law. Defendants' Motion To Dismiss must be denied.

**WHEREFORE,** the Plaintiff demands judgement against the Defendants for all compensatory, and punitive damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Awarding Plaintiff her former salary on her current job with the Department;

2.  Awarding Plaintiff all the backpay, TDA and pension benefits as well as other financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay in October 2021;

3.  Removing Plaintiff from the Problem Code;

4.  Granting such other and further relief that the Court seems just and proper.

Dated: April 24, 2026
      Glendale, N.Y.


                        /s/Helena Juszczak
                        Plaintiff Pro Se

25